664 A.2d 84

PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS PLAN and Constitution State Service Company, Appellees,

v.

Maria D. ENGLISH, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 8, 1994.

Decided Aug. 22, 1995.

426

427

David H. Rosenberg, Harrisburg, for M. English.

Stephen C. Baker, Malvern, for amicus.

A. Richard Feldman, Jennifer L. Hoagland, Philadelphia, Jeffrey E. Piccola, Harrisburg, for Pa.F.R.A.C.P.

William E. Mahoney, for amicus.

Leonard A. Sloane, Jennifer L. Abram, Caine, Dipasqua, Sloane & Raffaele, Media, PA, James R. Ronca, Schmidt and Ronca, P.C., Harrisburg, PA, for amicus curiae Pennsylvania Trial Lawyers Ass'n.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY *, Justice.

The issue presented in this appeal is whether the 1990 amendments (Act 6)[1] to the Motor Vehicle Financial Responsibility Law (MVFRL),[2] which in pertinent part renders unin-

* This opinion was reassigned to this author.
1. Act of February 7, 1990, P.L. 11, No. 6, effective July 1, 1990.
2. 75 Pa.C.S. § 1701 *et seq.*

sured and underinsured coverage optional, effectively elimi-
nates the obligation of the Assigned Claims Plan, 75 Pa.C.S.
§§ 1751–1757, to pay benefits to persons otherwise eligible
who are injured while driving or occupying an uninsured
vehicle. For the following reasons, we find that the Assigned
Claims Plan is required to provide such benefits, and accord-
ingly reverse the order of the Superior Court.

A review of the facts giving rise to the instant litigation is
necessary. On August 26, 1990, appellant, Maria English, who
was a passenger in an uninsured vehicle which was stopped at
an intersection, was seriously injured when the vehicle in
which she was riding was struck by another uninsured vehicle.
At the time of the accident, appellant neither owned a vehicle
nor resided with someone owning a vehicle and therefore, had
no automobile insurance which covered her for such injuries.
Accordingly, she applied for benefits from the Pennsylvania
Assigned Claims Plan. The Plan paid basic loss benefits
pursuant to 75 Pa.C.S. § 1753, but denied appellant uninsured
motorist benefits pursuant to 75 Pa.C.S. § 1754.

The Plan subsequently filed a Declaratory Judgment action
in the Court of Common Pleas of Dauphin County seeking
confirmation of its determination that under the circumstances
presented appellant was ineligible for uninsured motorist ben-
efits. Both parties filed motions for judgment on the plead-
ings. The trial court denied the Plan's motion and granted
appellant's motion finding that she was an eligible claimant
under § 1752(a)(5) of the MVFRL. The Superior Court re-
versed, holding that a claimant who is injured while occupying
or operating an uninsured vehicle on or after July 1, 1990, the
effective date of the Act 6 amendments, does not meet the
eligibility requirements of § 1752(a)(5) and, therefore, is not
entitled to benefits from the Plan. The instant appeal fol-
lowed.

Our review of a trial court's decision to grant or
deny judgment on the pleadings is limited to determining
whether the trial court committed an error of law or whether
there were facts presented which warranted a jury trial. In

so reviewing, we look only to the pleadings and any documents properly attached thereto. Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary. *Bata v. Central–Penn National Bank,* 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967).

▬▬ Generally, the Assigned Claims Plan provides benefits for those individuals injured in a motor vehicle-related accident who, through no fault of their own, have no other available source of insurance coverage. *Zeigler v. Constitution State Service,* 430 Pa.Super. 284, 634 A.2d 261 (1993). Section 1752 sets forth the specific requirements of eligibility for benefits under the Assigned Claims Plan. The crux of the instant case centers on the interpretation to be given to section 1752(a)(5) which provides:

> **(a) General rule.**—A person is eligible to recover benefits from the Assigned Claims Plan if the person meets the following requirements:

> (5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or *is not required to provide, benefits or uninsured and underinsured motorist coverage.*

(emphasis added). The trial court found that appellant was eligible for uninsured benefits under this subsection because the owner of the vehicle in which she was traveling, although not required to provide uninsured and underinsured motorist coverage, was required to provide medical benefits. The Superior Court, on the other hand, interpreted the plain meaning of this subsection to be that a claimant is eligible for coverage under the Plan only if both medical coverage *and* uninsured and underinsured coverage are required to be purchased by a vehicle owner. The Superior Court then reasoned that since Act 6 rendered uninsured and underinsured motorist coverage optional in Pennsylvania, the owner of vehicle in which appellant was riding was not required to purchase uninsured and underinsured coverage and that

therefore, appellant was not entitled to benefits from the Plan.[3,4] In effect, then, the Superior Court's decision precludes anyone injured after July 1, 1990 from recovering from the Plan unless they are a pedestrian or a bicyclist. We find the Superior Court's interpretation of § 1752(a)(5) to be strained and not at all in keeping with the plain meaning of the words of the statute or the intent of the Assigned Claims Plan.

 Our rules of statutory construction make clear that in interpreting statutes we must at all times seek to ascertain and effectuate the legislative intent underlying the enactment of the particular statute(s). 1 Pa.C.S. § 1921(a). Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words. Where, however, the statute is unclear or susceptible of differing interpretations, the courts must look to the necessity of the act, the object to be attained, the circumstances under which it was enacted and any legislative or administrative interpretations thereof. *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72 (1989). In ascertaining the legislative intent of a particular statute it is presumed, *inter alia*, that the legislature did not intend a

3. Under Act 6, 75 Pa.C.S. § 1731(a) was amended to read:
 **§ 1731. Availability, scope and amount of coverage**
 (a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). *Purchase of uninsured motorist and underinsured motorist coverage is optional.*
 (Emphasis added).

4. We think it important to note that the Plan did not dispute the payment of medical benefits pursuant to § 1753, but only the payment of uninsured motorist benefits under § 1754. The Superior Court's interpretation, however, explicitly precluded the recovery of *any* benefits, including medical benefits and uninsured and underinsured benefits since eligibility for benefits under both § 1753 and § 1754 is defined in § 1752, although it recognized that the issue of payment of medical benefits was not before the court. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 427 Pa.Super. 105, 110 n. 4, 628 A.2d 847, 849 n. 4 (1993).

result that is absurd or unreasonable nor one that would be violative of the United States Constitution or the Constitution of this Commonwealth. It is also presumed that the legislature intends to favor the public interest as opposed to any private interest. *See generally,* 1 Pa.C.S. § 1922.

■ Contrary to the Superior Court's interpretation of § 1752(a)(5), we interpret the term "or" as meaning "either" which we find to be the commonly accepted definition. The use of the disjunctive "or" in § 1752(a)(5) thus indicates that as long as the owner of the registered vehicle is required to provide either medical benefits or uninsured or underinsured motorist benefits, a claimant meets the section (a)(5) eligibility requirements. Since each person owning a motor vehicle registered in this Commonwealth must maintain financial responsibility in the form of either a liability insurance policy or program of self insurance which meets the minimum required medical benefits, *see* 75 Pa.C.S. § 1786, the owner of the vehicle in which appellant was here riding cannot be deemed "an individual . . . who is not required to provide, benefits or uninsured or underinsured motorist coverage." Accordingly, § 1752(a)(5) was here satisfied. This interpretation is not only in keeping with the plain meaning of the statute but is also consistent with the purpose of the Assigned Claims Plan which is, as noted above, to provide benefits to injured persons who, through no fault of their own, have no insurance to protect themselves.

■ Even assuming that the language employed in § 1752(a)(5) is found to be ambiguous, we think that reliance on the Act 6 amendments to interpret § 1752(a)(5) is simply incorrect. To reason, as did the Superior Court, that this alleged "change" in § 1752(a)(5) eligibility came about through the amendment of an entirely different section of the MVFRL without any reference whatsoever to § 1752(a)(5) is simply illogical. The statutory language at issue was written long before the optional provisions of Act 6 existed. Section (a)(5) applies to two classes of vehicle owners: (1) self-insurers; and (2) an individual or entity who or which is immune from

liability or not required to provide benefits or uninsured or underinsured motorist coverage. These two classes encompass self-insurers, *i.e.,* those who have provided certification that they have other reliable financial arrangements, deposits, resources or commitments acceptable to the Department of Transportation and who are thus exempt from purchasing the requisite insurance through a standard policy in order to comply with the MVFRL, *See* 75 Pa.C.S. § 1782 and also those owners who are otherwise exempt from complying with the MVFRL because, for instance, they own a vehicle which is registered in another state. *See, e.g. Rosado v. Constitution State Service Co.,* 425 Pa.Super. 561, 625 A.2d 1239 (1993). Accordingly, it seems clear to this Court that the intent behind § 1752(a)(5) was simply to recognize that persons occupying a vehicle owned by a properly self-insured person or someone who was not required to maintain financial responsibility under the MVFRL would not be eligible for coverage under the Assigned Claims Plan because there were other sources of recovery available and/or because the owner of the vehicle either was exempt from compliance with the MVFRL or had no obligation to contribute to the Assigned Claims Plan. *See, e.g.* 75 Pa.C.S. § 1787(c) (self-insurers are not required to contribute to the Assigned Claims Plan). As such, we are reluctant to conclude that the legislature, some six (6) years after the enactment of § 1752(a)(5) and through the amendment of an entirely distinct section of the MVFRL, intended to expand, *sub silentio,* § 1752(a)(5) to now render ineligible those claimants who occupy vehicles not encompassed in the very narrow and unique class of owners explicitly set forth in that section. Succinctly stated, the enactment of those provisions rendering uninsured and underinsured motorist coverage optional simply cannot be deemed to have also perforce eliminated coverage under the Assigned Claims Plan for all but essentially pedestrians without any corresponding amendment to § 1752(a)(5).

Moreover, to interpret § 1752(a)(5) as did the Superior Court would be not only unfair but also unreasonable. As noted above, the Superior Court's interpretation would, in

effect, render benefits under the Plan available only to pedestrians and bicyclists. The Superior Court found this distinction between pedestrians and bicyclists on the one hand, and passengers in automobiles on the other, to be logical. The Superior Court reasoned that pedestrians have no choice as to whether the vehicle which injures them is insured or uninsured whereas passengers in automobiles "make conscious decisions to ride in a particular vehicle and must accept the attendant risks as to the financial responsibility of the owner." In other words, the Superior Court found it logical to preclude passengers of uninsured vehicles from recovering benefits under the Plan since such persons can determine whether the driver of the automobile in which they intend to travel has elected to purchase uninsured motorist insurance, and then can presumably engage in some kind of "cost-benefit" analysis in deciding whether to ride with the driver. This explanation hardly serves as a "distinction" which would explain the legislature's purported action in treating these classes of people differently. Motor vehicle passengers do not "assume the risk" of being injured any more than pedestrians and bicyclists do. The real question is whether one type of innocent victim of negligent driving is deserving of any less protection than another. In light of the purposes to be served by the Assigned Claims Plan, we think not.

Nor are we persuaded by the Superior Court's further reasoning that to permit recovery by occupants of an uninsured vehicle would be unfair and clearly contrary to the purposes behind the MVFRL since persons occupying vehicles wherein the owner carries the requisite first party coverage but has elected to forego un/underinsured motorist coverage in exchange for lower premiums would then receive less favorable treatment. First, all a claimant is entitled to under the Assigned Claims Plan is a maximum of $5000 in medical benefits (§ 1753) and up to $15,000 in additional benefits (§ 1754), against which any medical benefits received are set off. An occupant of an insured vehicle, even one for which the owner thereof elected not to purchase underinsured and uninsured coverage, who was injured by an uninsured driver, may

be able to recover more than $5000 since an insured owner can purchase much more than that amount. Additionally, an occupant of an insured vehicle would also be entitled to recover income loss benefits or accidental death benefits and funeral benefits, none of which are payable under the Assigned Claims Plan. *See* 75 Pa.C.S. § 1753. Moreover, if the insured owner had purchased uninsured and underinsured coverage, the occupant of the insured vehicle would clearly be "better off" insofar as he or she would have available an additional source of recovery if the circumstances warranted. Finally, even if it were true that in some cases, occupants of uninsured cars would be "better off" than occupants of insured cars, the Superior Court's decision to rectify this perceived unfairness by throwing out the baby with the bath water is untenable. As demonstrated above, under the Superior Court's holding occupants of automobiles whose owners have failed to comply with the law, and who are injured by another scofflaw, are entitled to nothing, save what they can recover from a lawsuit against either of the parties. Thus, they are in a far worse position than occupants of insured vehicles.

Finally, we think that providing benefits to claimants such as appellant is in keeping with the public policy of the MVFRL which, in part, seeks to ensure that owners of registered vehicles in this Commonwealth purchase adequate insurance. The Plan's argument to the contrary that to allow claimants such as appellant benefits under the Assigned Claims Plan would create incentives to drive without insurance and thus run afoul of this public policy of the MVFRL is simply illogical. Providing benefits under the Assigned Claims Plan to *occupants* of vehicles certainly will not serve as a disincentive for the *owners* of those vehicles to purchase insurance. Nor can punishing occupants such as Appellant create an incentive for owners to purchase insurance. Certainly, denying Appellant coverage serves no purpose since Appellant does not own a car and therefore has no obligation to purchase insurance (and, in fact, could not purchase motor vehicle insurance). The Assigned Claims Plan contends that the legislature could not have intended to benefit those who

contribute nothing toward Pennsylvania's insurance system. This argument is patently absurd: the *occupant* who does not own an automobile would not have any reason to contribute to Pennsylvania's insurance system.[5] Moreover, as stated above, the whole purpose of the Assigned Claims Plan is to provide benefits for persons injured by a motor vehicle and who have no source of benefits, *i.e.*, persons who lawfully have no insurance (and therefore do not pay into the insurance system) because they are not the owner of a motor vehicle.

Accordingly, for all the foregoing reasons, we must reverse the decision of the Superior Court.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, Senior Justice, is sitting by designation.

---

**5.** We emphasize that *owners* of motor vehicles are in all cases ineligible to claim benefits under the Assigned Claims Plan. *See* 75 Pa.C.S. § 1752(a)(3).

Moreover, pedestrians and bicyclists who do not own registered vehicles do not contribute to Pennsylvania's insurance system either, yet the Superior Court finds that those individuals *are* entitled to benefits under the Assigned Claims Plan.