**Krzysztof KIEC and Krystyna Kiec, his wife, Appellants,**

v.

**Nina E. SHERRERD, Executrix of the Estate of Joseph H. Kriss, Deceased, Appellee.**

Superior Court of Pennsylvania.

Submitted March 1, 1999.

Filed June 8, 1999.

Leon H. Kline, Philadelphia and Charles A. Banta, Easton, for appellants.

William G. Schwab, Lehighton, for appellee.

Before KELLY, J., CERCONE, President Judge Emeritus, and MONTEMURO, J.*

CERCONE, President Judge Emeritus:

¶ 1 This is an appeal from an order finalizing an adjudication and *decree nisi* entered in the Court of Common Pleas of Carbon County following the denial of Appellants' post-trial motions. We reverse and remand for proceedings consistent with this Opinion.

¶ 2 The relevant facts as revealed in the record provide that in December of 1986 the Kiecs, Appellants, entered into a purchase agreement with Joseph and Lillie Kriss to buy lot # 604 in Kriss Pines Estates in Franklin Township of Carbon County. The purchase price was $15,-500.00 and was to be paid in monthly installments over a five (5) year period with an interest rate of nine (9) percent. As Appellants made their final payment in January of 1992, the deed of lot # 604 was executed, delivered and recorded in early February of 1992. Soon thereafter, in an attempt to sell lot # 604, Appellants were informed upon contacting a real estate broker that they would have to furnish a prospective buyer with a permit for an on-site sewage system. After Appellants applied for an on-site sewage permit in November of 1992, two percolation tests were completed but were denied since no suitable area could be determined. Because

---

* Retired Justice assigned to the Superior Court.

Lillie Kriss died in November of 1992 and Joseph Kriss died in November of 1994, Appellee, Nina Sherrerd, was appointed Executrix of Joseph's estate.

¶ 3 In an attempt to cancel the deed and recover the purchase price of lot # 604, Appellants instituted a suit in Equity Court in Carbon County Civil Division. The matter was heard before the Honorable John P. Lavelle, President Judge, on September 16, 1997. On January 13, 1998 the Chancellor entered an adjudication and a *decree nisi* denying Appellants their requested relief. Following the denial of Appellants' post-trial motions, the *decree nisi* was finalized. This appeal followed.

Appellants raise four (4) issues for our review:

1. Did the Chancellor err in determining, in the circumstances of this case, that the plaintiffs-buyers failed to meet their burden of proof that they were fraudulently induced into purchasing the lot involved?

2. Did the Chancellor err in determining that the vendors' contract for the sale of the lot involved complied with the vendors' statutory duty to disclose the facts specified by the statute?

3. Did the chancellor err in determining that the vendors' contract for the sale of the lot involved shows that the vendors did not deliberately conceal facts which the vendors were required by the statute to disclose?

4. Did the Chancellor err in determining, in the circumstances of this case, that the plaintiffs failed to prove a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law?

Appellants' Brief at 4.[1] Our Supreme Court recently reiterated an appellate court's standard of review of a final decree by stating:

the findings of the Chancellor will not be reversed unless it appears that he has clearly abused his discretion or committed an *error of law*. Where credibility of witnesses is important to the determination, the Chancellor's findings are entitled to particular weight because of his opportunity to observe their demeanor. Where a reading of the record reasonably can be said to reflect the conclusions reached by the Chancellor, a reviewing court may not substitute its judgment for that of the Chancellor. A reviewing court, however, is not bound by findings which are without support in the record or have merely been derived from other facts.

*Bortz v. Noon,* 556 Pa. 489, ——, 729 A.2d 555, 559 (1999) (emphasis supplied) (citations omitted).

¶ 4 The interpretation of the Pennsylvania Sewage Facilities Act, particularly Section 750.7a, and the parties' sales agreement involving lot # 604 are the linchpin in determining the outcome of this matter. Specifically, Section 750.7a provides:

(a) Every contract for the sale of a lot defined in section 2[1] for which there is no currently existing community sewage system available shall contain a statement in the contract clearly indicating to the buyer that there is no community sewage system available and that a permit for an individual sewage system will have to be obtained pursuant to section 7.[2] The contract shall also clearly state that the buyer should contact the local agency charged with administering this act before signing the contract to determine the procedure and requirements for obtaining a permit for an individual sewage system if one has not already been obtained. For purposes of this section the terms "community sewage system" and "individual sewage system" shall be construed to exclude any drainage system for the control of surface water or the control of storm runoff water.

(b) any contract for the sale of a lot which does not conform to the require-

---

1. Due to the Chancellor's error in interpreting the Pennsylvania Sewage Facilities Act, 35

P.S. Section 750.1 *et seq.,* we need not decide all of Appellants' issues before this tribunal.

ments of subsection (a) shall not be enforceable by the seller against the buyer. Any term of such contract purporting to waive the rights of the buyer to the disclosures required in subsection (a) shall be void.

---

[1] 35 P.S. Section 750.2.
[2] 35 P.S. Section 750.7.

35 P.S. Section 750.7a (footnotes in original). In construing the terms of a statute we are mindful that:

(a) [t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) [w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S.A. Section 1921(a) & (b).

¶ 5 In light of this provision, our Supreme Court has held that:

[t]he object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. Regardless, when the words of the statute are free and clear from all ambiguity, we will not disregard the letter of the law under the pretext of pursuing its spirit.

*Markle v. W.C.A.B.*, 541 Pa. 148, 157, 661 A.2d 1355, 1360 (1995) (citations omitted). Also, it is a clear presumption "that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. Section 1922(1). In fact, it is presumed further "that the General Assembly intends the entire statute to be effective and certain." *Id.*, at (2), *See Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84 (1995) (legislative intent is not to promulgate a statute that effectuates an absurd or unreasonable result).

¶ 6 Accordingly, in applying the aforementioned principles in interpreting the pertinent section of the Sewage Facilities Act, it is clear that in regard to a land

sales contract it is mandatory that: 1) if a community sewage system does not exist currently for the lot, the buyer *shall* be informed that a permit for an individual sewage system must be obtained; 2) the contract *shall* state clearly that the buyer should contact the agency responsible for administering the Act *before* signing the agreement to determine the requisite actions that must be taken so as to obtain a permit for an individual sewage system, if one has not been secured already. 35 P.S. Section 750.7a.(a). Moreover, the Act is clear that non-compliance with subsection (a) shall render the sales contract unenforceable by the seller against the buyer. *Id.*, (b). The Chancellor ruled that paragraph 8 of the parties' agreement of sale complied with the Sewage Facilities Act and put Appellants on notice that "the lot they were buying would require an individual sewage system, that the system had to comply with state and local laws, and the language alerted them to contact state and local health authorities." Trial Court Opinion, 1/13/98, at 10.

¶ 7 The pertinent paragraph of the sale's agreement reads:

[n]o individual sewage disposal system shall be permitted on any lot or building site unless such system is designated, located and constructed in accordance with the requirements, standards and recommendations of the State or local public health authorities.

Parties' Agreement of Sale, 12/26/86, at Paragraph 8. In comparing paragraph 8 to the mandates set forth in the Act, we conclude that this paragraph fails to disclose clearly to the prospective buyer that lot # 604 does not contain a community sewage system and that the buyer will have to obtain a permit for an individual sewage system. Also, the contract does not state clearly that the buyer of the lot should contact the local agency charged with administering the Act *before* the signing the contract in order to determine the process and procedure involved in securing a permit for an individual sewage system,

if a permit has not been obtained already. Clearly the Act sets forth specific terms and requirements for a land sale contract and paragraph 8 of Appellants' agreement falls far short of what is required. *See* 35 P.S. Section 750.7a.

¶ 8 Although not necessarily binding on this Court, we find the Commonwealth's Court's decision in case of *Lake Homes, Inc. v. Hesser*, instructive in that the Court affirmed the trial court's grant of a summary judgment because the land sale agreement did not contain the notice required under the Pennsylvania Sewage Facilities Act informing the buyer that a community sewage system was not available currently. *See Lake Homes, Inc. v. Hesser*, 167 Pa.Cmwlth. 440, 648 A.2d 366 (1994). We believe that this is the same situation in this matter, and that paragraph 8 of the sales agreement does not remedy the lack of notice required under the Pennsylvania Sewage Facilities Act. Accordingly, we are compelled to reverse the Trial Court in this matter. Thus, we cancel Appellants' deed to lot # 604 and rescind the contract of sale. We direct the Chancellor to conduct a hearing to determine Appellants' monetary expenditures regarding lot # 604, including but not limited to, the purchase price, interest, costs and taxes as well as the authority to grant such further relief as the Chancellor deems fair, just and equitable.[2]

¶ 9 Order vacated. Remanded for proceedings consistent with this Opinion. Superior Court Jurisdiction relinquished.

---

**2.** We are cognizant of the fact that Appellees raise an issue of *res judicata* alleging that the issues before this tribunal are the same as those regarding a matter involving another purchase of land between the parties. Since the land agreements involve two separate parcels of land and were commenced two years apart, clearly the doctrine of *res judicata* is not applicable. *See McArdle v. Tronetti,* 426 Pa.Super. 607, 627 A.2d 1219 (1993).