**SEIPSTOWN VILLAGE, LLC and Lloyd Roberts, Appellants**

v.

**ZONING HEARING BOARD OF WEISENBERG TOWNSHIP, Lehigh County, Pennsylvania and Weisenberg Township, Harry A. Lande, Brian Landers, Scott Searcy, Brad Alden, Darta Alden, Randall Huff, Judy Huff, Sherwood Zettlemoyer, Iris Butz, John Kleinschuster, Dr. Alan Muto and Constance Walker.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.
Decided Aug. 31, 2005.

James T. Huber, Allentown, for appellants.

Maria C. Mullane, Allentown, for appellee, Zoning Hearing Board of Weisenberg Township.

F. Peter Lehr, Allentown, for appellee, Weisenberg Township.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Lloyd Roberts and Seipstown Village, LLC (collectively, Developer)[1] appeal from an order of the Court of Common Pleas of Lehigh County (trial court) that denied Developer's land use appeal. In this case we consider the authority of the Weisenberg Township Zoning Hearing Board (Board) to reopen the record following an oral decision interpreting a provision of the Township's zoning ordinance in Developer's favor. We also consider whether Developer was entitled to a variance as a form of alternative relief. The trial court affirmed the final written decision of the Board rejecting all of Developer's claims.

Developer owns a 28–acre parcel of land located in the Township's Village Center Zoning District (Property).[2] On March 4,

1. Lloyd Roberts is the owner of record and Seipstown Village, LLC is the equitable owner of the property at issue in this case. Developer's Notice of Land Use Appeal, filed June 10, 2004, at Appendix A (Application for Hearing).

2. The Village Center Zoning District has a number of permitted uses, including, *inter*

2004, Developer filed a preliminary land development plan (Plan) for a project it called "Hassen Creek Village." Developer proposed to construct twelve separate apartment buildings with accessory on-site parking areas, with each building to contain either fourteen or eighteen individual apartment units, for a total of 192 apartment units. However, the Plan proposed to maintain the Property as one contiguous lot, under common ownership, and not to subdivide it.

On March 15, 2004, the Township zoning officer issued an opinion determining that the Plan was not in compliance with Section 1403.02 of the Ordinance,[3] which states that "[a] plot plan shall show a separate lot for each dwelling." ORDINANCE § 1403.02. Developer appealed to the Board and requested a determination that Section 1403.02 is ambiguous and inapplicable to the Plan. Alternatively, Developer requested a variance from Section 1403.02.

The Board held a duly advertised public hearing on May 12, 2004. A number of Township residents (Objectors) appeared at the hearing to oppose Developer's zoning appeal. Although Objectors were not represented by counsel, they signed entry of appearance forms and were sworn in at the beginning of the hearing.

Developer presented the testimony of Larry Turoscy, a registered professional engineer and surveyor who prepared the Plan. Turoscy testified that it would be possible to subdivide the Property into twelve lots, one for each of the buildings, and that Developer had in fact drafted such a subdivision plan for the Property. Developer ultimately opted to submit the Plan without plot lines because of what Turoscy described as "odd-shaped" lots and unnatural boundaries. Reproduced Record at 90a–91a (R.R. ——). Developer also presented the testimony of its managing partner and the Township's zoning officer.

At the conclusion of Developer's case, the Board recessed for an executive session. When it returned to the hearing room, the Board voted unanimously that Section 1403.02 of the Ordinance was ambiguous and inapplicable to Developer's Plan.[4] Following the Board's announcement, Terry Thomasco, one of the Objectors, complained that Objectors had not been given an opportunity to present testimony or arguments in support of their position. The Board acknowledged its oversight and heard questions and comments from several Objectors, notwithstanding that Developer and its representatives had left the hearing room.[5] Although the Board members were unpersuaded by Objectors' comments, they agreed, on the advice of their solicitor, to continue the hearing until June 2, 2004, so that any Objectors who had been deprived of the opportunity to offer com-

---

*alia*, agriculture, medical or dental clinic, multiple dwellings (when served by a centralized sewage disposal system), office, restaurant, and single-family detached dwellings. ORDINANCE § 802.

3. WEISENBERG TOWNSHIP, PA, ZONING ORDINANCE § 1403.02 (1993) (ORDINANCE).

4. In light of its decision, the Board determined that Developer's alternative request for a variance was rendered moot.

5. According to the original transcript, Developer and its representatives left the hearing room immediately after the Board's oral vote. Subsequently, the court reporter amended the transcript to reflect her recollection that Developer and its representatives were no longer present after the first Objector, Terry Thomasco, had begun to place his objections on the record. Thus, while the exact timing of their departure is unclear, the record demonstrates that Developer and its representatives were not present for Objectors' comments.

ments or testimony could do so. All parties in interest were duly notified in writing of the continued hearing and the meeting was publicly advertised.

At the continued hearing on June 2, 2004, Developer objected to the proceeding, contending that the Board's oral vote on May 12, 2004, constituted a final decision. Developer also objected to what it characterized as *ex parte* communications between Objectors and the Board that took place on May 12, 2004, after the oral vote was taken. The Board overruled the objections and heard extensive testimony from Objectors as well as arguments from counsel for both parties. At the conclusion of the hearing, the Board voted unanimously to rescind its oral vote of May 12, 2004, denying Developer's request for a favorable interpretation of Section 1403.02 or for a variance. A final, written decision was issued on June 22, 2004. Developer appealed to the trial court,[6] which affirmed the Board's decision without taking additional evidence. Developer now appeals to this Court.

■ On appeal,[7] Developer raises three issues. First, Developer contends that the Board improperly engaged in *ex parte* communications with Objectors at the May 12, 2004, hearing and after, Developer argues, the hearing was concluded;

further, the Board lacked authority to reconsider its oral decision. Second, Developer argues that the Board erred in finding that Section 1403.02 is unambiguous. Third, Developer asserts that it was entitled to alternative relief in the form of a variance since Section 1403.02 creates an unnecessary hardship.[8]

■ In its first issue, Developer assails what it characterizes as the Board's improper reconsideration of its final, oral decision following the May 12, 2004, hearing. We disagree with Developer's premise that the Board's oral vote constituted a final decision for purposes of the Municipalities Planning Code (MPC).[9]

■ Under the MPC a "decision" is defined as a "final adjudication" of a zoning hearing board. Section 107(b) of the MPC, 53 P.S. § 10107(b). The board is required to render a "written decision" within 45 days after the last hearing, otherwise an applicant's application is deemed approved, and such decision must be personally delivered to the applicant or mailed to him. Sections 908(9)-(10) of the MPC, 53 P.S. §§ 10908(9)-(10). The decisional law of this Commonwealth confirms that a final order of a zoning hearing board must be reduced to writing. *See, e.g., Mountain Protection Alliance v. Fayette County*

---

6. Objectors filed a precautionary appeal from the Board's May 12, 2004, oral decision in order to preserve their appellate rights if the trial court found the June 2, 2004, hearing and decision were a nullity. The trial court later determined that Objectors' appeal was moot after it denied Developer's appeal.

7. In zoning appeals, as here, where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. *Baker v. Chartiers Township Zoning Hearing Board*, 677 A.2d 1274, 1276 (Pa. Cmwlth.1996). An abuse of discretion will be found only if the zoning hearing board's find-

ings are not supported by substantial evidence. *Id.*

8. The trial court noted that Developer did not appeal the Board's refusal to grant a variance. Trial Court Opinion at 5 n. 5. However, our review of the record reveals that Developer filed two briefs with the trial court: one dated August 23, 2004, in support of its own appeal and a second brief dated September 2, 2004, in opposition to Objectors' appeal. The former raised the variance issue and, thus, that issue was preserved.

9. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

*Zoning Hearing Board,* 757 A.2d 1007, 1008 n. 1 (Pa.Cmwlth.2000) (where zoning hearing board orally denied applicant's request for special exception but failed to reduce its decision to writing, applicant's request deemed automatically granted under Section 908(9) of the MPC); *Relosky v. Sacco,* 514 Pa. 339, 523 A.2d 1112 (1987) (holding that the language of Section 908(9) of the MPC explicitly directs a zoning board to render a written decision). In light of the foregoing, we conclude that the Board's written decision dated June 22, 2004, was the official, final decision in this matter and not the oral vote taken May 12, 2004.

◼ Once it is established that the Board's May 12, 2004, oral vote was not a final decision, it is clear that the Board did not improperly "reconsider" that decision.[10] Rather, at that point in the proceedings, there was no decision to reconsider. The Board simply continued the proceedings to allow Objectors their opportunity to be heard, a right guaranteed to them under Section 908(5) of the MPC, 53 P.S. § 10908(5) (all parties before a zoning hearing board "shall be afforded the opportunity to respond and present evidence and argument."). The members

of the Board were free to take this, or virtually any other action, up until the time they executed a final written decision. They certainly did not abuse their discretion in this case by correcting a glaring oversight within minutes of their oral vote and allowing Objectors an opportunity to present their case.[11]

◼ As part of its first issue, Developer argues that the discussion that ensued between Objectors and the Board at the conclusion of the May 12, 2004, hearing, after Developer and its representatives had departed, constituted improper *ex parte* communications in violation of Section 908(8) of the MPC. It provides as follows:

> The board or the hearing officer shall not communicate, directly or indirectly, with any party or his representatives in connection with any issue involved except upon notice and opportunity for all parties to participate, shall not take notice of any communication, reports, staff memoranda, or other materials, except advice from their solicitor, unless the parties are afforded an opportunity to contest the material so noticed and shall not inspect the site or its surroundings after the commencement of hearings with any party or his representative un-

**10.** Developer cites to this Court's decision in *Grand Central Sanitary Landfill, Inc. v. Zoning Hearing Board of Plainfield Township,* 155 Pa.Cmwlth. 273, 625 A.2d 115 (1993) for the proposition that the Board lacked authority to reconsider its decision. *Grand Central* is inapposite here. In that case, the zoning hearing board agreed to rehear a matter one year after it had entered a final, written decision. This Court found that such a rehearing was not authorized under the MPC and that the board lacked jurisdiction. *Grand Central* is factually distinguishable on several bases. First, the board had already rendered a written final decision by the time it agreed to reopen the case; in the present case, the Board did not render a written decision until after the continued hearing had been completed. Second, the board in *Grand Central*

conducted a *de novo* hearing after it granted reconsideration; here, the Board's continuance left the record open but did not vitiate the proceedings that had already occurred. Third, in *Grand Central,* the board reconsidered the case a year after the original hearing; in the present case, additional evidence that should have been taken at the initial hearing was received within 21 days of that hearing, and the Board's final written decision was made within 45 days of the initial hearing, as required by Section 908(9) of the MPC, 53 P.S. § 10908(9).

**11.** We also fail to see how Developer was in any way prejudiced by the continuance, which only delayed the process by three weeks.

less all parties are given an opportunity to be present.

53 P.S. § 10908(8).

We disagree with Developer's characterization of the communications as *ex parte.* As indicated above, the Board's oral vote at the May 12, 2004, hearing did not constitute a final decision or operate to affect a formal close to the proceeding. The public hearing was still in session, and the Board, after realizing that it had foreclosed Objectors from presenting their case, moved quickly to correct its error while the record was still open. It was obligated to do so under the MPC, and we reject Developer's suggestion that it could frustrate Objectors' due process rights by beating a hasty retreat from the hearing room. Moreover, there is no indication that Developer was in any way prejudiced by the alleged *ex parte* communications at the May 12, 2004, hearing. The unanimous vote in Developer's favor remained unchanged after Objectors lodged their opinions, and one Board member stated that Objectors' comments had no impact on his vote. The Board did not, in fact, reverse its decision until after hearing extensive testimony and arguments from both parties at the continued hearing on June 2, 2004.

 In its second issue, Developer argues that the Board erred in finding that Section 1403.02 of the Ordinance is unambiguous and therefore applicable to Developer's Plan. Section 1403.02 requires that a plot plan for a building permit "shall show a separate lot for each dwelling." The Board concluded that because Developer's Plan did not subdivide the Property for each apartment building, it did not satisfy Section 1403.02. Developer maintains that

Section 1403.02 is ambiguous when applied to an apartment complex.

 In considering Developer's argument we note that whether a proposed use falls within a given category specified in a zoning ordinance is a question of law and subject to review on that basis. *Crary Home v. Defrees,* 16 Pa.Cmwlth. 181, 329 A.2d 874, 876 (1974). Our inquiry is one of statutory construction and our function, as a reviewing court, is to determine the intent of the legislative body which enacted the legislation. *Id.* A zoning hearing board's interpretation of a zoning ordinance is entitled to great weight, and it is the practice of this Court "to defer to a zoning board's interpretation of the zoning ordinance it is charged to enforce." *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh,* 831 A.2d 764, 770 (Pa.Cmwlth.2003).

Several key definitions in the Ordinance guide our inquiry. The operative term in Section 1403.02 is the word "dwelling," which is defined as "[a] building arranged, intended or designed to be occupied as a residence." ORDINANCE § 201. The Ordinance sets forth several subcategories of "dwelling," one of which is relevant here:

> MULTIPLE DWELLING. A single building or group of attached dwelling units intended and designed to be occupied by three or more families living independently of each other as separate housekeeping units.

*Id.*[12] "Dwelling Unit" is defined as "[o]ne or more rooms with provision for cooking, living, sanitary and sleeping facilities arranged for the use of one family." *Id.* Finally, Section 201 defines the terms "building" and "lot" as follows:

> tached dwelling (twin)" and "two family detached dwelling (duplex)." ORDINANCE § 201; R.R. 498a.

---

**12.** The other types of dwellings are "single family attached dwelling," "single family detached dwelling," "single family semi-de-

BUILDING. A structure or object constructed on, erected on, placed on, located on, or affixed to the ground, with a roof supported by columns or walls. Structures divided by unpierced masonry division walls or a State-conforming fire wall extending from the ground through the roof shall be deemed to be separate buildings. A structure meeting the definition of building shall be constructed to be a building whether or not it has been affixed to the ground by heretofore existing conventional methods; specifically, the fact that an object or structure is located on or placed on the ground by the use of skids or similar means shall not exempt or exclude the structure or object from being considered a building.

* * *

LOT. A designated parcel, tract or area of land established by a plat or otherwise as permitted by law and to be used, developed or built upon as a unit.

We agree with the Board that, based upon the foregoing definitions, there is no ambiguity in Section 1403.02. A building to be occupied by three or more families living independently as separate housekeeping units, such as an apartment building, is a "multiple dwelling." A "multiple dwelling" is one type of "dwelling" under Section 201 of the Ordinance. Since Section 1403.02 requires that a plot plan show separate lots for each dwelling, it follows that only one dwelling, regardless of type, may be placed upon a lot.[13] Here, each of the twelve apartment buildings proposed in Developer's Plan is a "multiple dwelling" and, therefore, Developer was required to submit a plan showing each apartment building on a separate lot.

▮ In its final argument, Developer contends that the Board should have granted its alternative request for a variance because application of Section 1403.02 to its Plan will result in unnecessary hardship. We disagree.

▮ The MPC sets forth the standards for granting a variance. Our Supreme Court explained that Section 910.2 requires an applicant to demonstrate the following criteria, to the extent they are relevant in a given case:

(1) That there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions;

(2) That because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that a variance is needed to enable reasonable use of the property;

(3) That unnecessary hardship has not been created by the applicant;

---

**13.** We emphasize that Section 1403.02 does not require a separate lot for each "dwelling unit," only for each "dwelling," or, in this case, each apartment building. Developer's expert witness confused the terms, as evidenced by the following excerpt from his testimony:

Q. Mr. Turoscy, on the issue of dwelling . . ., in your interpretation of the ordinance, is there more than one dwelling in each building on the [Plan]?

A. Yes.

Q. Some have eighteen dwellings, correct?

A. Correct.

Q. Some have fourteen dwellings?

A. Correct.

Q. Does that mean the 1403.02 requires fourteen different lots or eighteen different lots? Can you answer that question?

A. I don't know. I'm not sure how that Section .02, how you apply that to this type of development. I don't know how to apply putting a single lot together for a dwelling unit where there's one unit over the top of another unit.

R.R. 94a–95a.

(4) That the variance is not detrimental to the public welfare; and

(5) That the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue.

*Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh,* 554 Pa. 249, 257, 721 A.2d 43, 47 (1998) (citing Section 910.2 of the MPC, 53 P.S. § 10910.2).[14] A finding of unnecessary hardship sufficient to support the grant of a variance must arise from and be supported by the evidence. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). A variance is to be granted sparingly and only where exceptional circumstances exist which justify the grant of the requested variance. *Mitchell v. Zoning Hearing Board of the Borough of Mount Penn,* 838 A.2d 819, 828 (Pa. Cmwlth.2003).

In the present case, Developer presented no evidence of unique physical conditions peculiar to the Property, such as irregularity, narrowness or shallowness, that would preclude Developer from developing the Property in conformity with the requirements of the Ordinance. Develop-

ers claim of hardship is also belied by the testimony of its own expert witness, who acknowledged that Developers preliminary plan depicted each of the twelve apartment buildings on separate subdivided lots in conformity with Section 1403.02. Developer chose not to pursue this preliminary plan for reasons that are not clear from the record.[15] In any case, we agree with the Board that Developer failed to meet its burden of demonstrating the unnecessary hardship required for the issuance of a variance.

Accordingly, we affirm the decision of the trial court.

## ORDER

AND NOW, this 31st day of August, 2005, the order of the Court of Common Pleas of Lehigh County dated November 10, 2004, in the above-captioned matter is hereby affirmed.

---

**14.** Section 1311 of the Ordinance mirrors Section 910.2 of the MPC and sets forth identical requirements for a variance.

**15.** Turoscy testified that subdividing the Property into twelve separate lots was unworkable because the boundaries would be irregular and would bisect parking areas. The trial

court opined, however, that Developer was attempting to avoid compliance with minimum lot area and setback requirements—ostensibly the very types of dimensional restrictions that Section 1403.02 was intended to reinforce.