IN THE COMMONWEALTH COURT OF PENNSYLVANIA

First Avenue Partners, a Pennsylvania : 
limited partnership, James D. Bolander : 
and Mona A. Bolander, husband and : 
wife, Barbara C. Johnstone, William R. : 
Hartz, Paul Richard Bernthal, : 
Christopher Ragland and April M. : 
Ragland, husband and wife, : 
Mary Ellen Purtell and Robert Crecine, : 
    Appellants : 
        : 
    v. : No. 2476 C.D. 2015
        : Argued: November 15, 2016
The City of Pittsburgh Planning : 
Commission and City of Pittsburgh and : 
Forza Fort Pitt, Inc. : 


BEFORE: HONORABLE ANNE E. COVEY, Judge
     HONORABLE JULIA K. HEARTHWAY, Judge
     HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI     FILED: December 9, 2016


   First Avenue Partners, James D. Bolander and Mona A. Bolander, Barbara C. Johnstone, William R. Hartz, Paul Richard Bernthal, Christopher Ragland and April M. Ragland, Mary Ellen Purtell and Robert Crecine (collectively, Objectors)[1] appeal from an order of the Court of Common Pleas of

---

[1] First Avenue Partners is a Pennsylvania limited partnership and is the equitable owner of a multi-story office building commonly referred to as "The Hartley Rose Building" located at 425 First Avenue in the First Ward in the City of Pittsburgh. James D. Bolander and Mona A. Bolander, husband and wife, Barbara C. Johnstone, William R. Hartz, Paul Richard Bernthal, Christopher Ragland and April M. Ragland, husband and wife, Mary Ellen Purtell and Robert
**(Footnote continued on next page…)**

Allegheny County (trial court) quashing as untimely their appeal of the City of Pittsburgh's (City) Planning Commission's oral approval of Forza Fort Pitt, Inc.'s (Forza) project development plan.  For the reasons that follow, we reverse.

**I.**

Forza owns a parcel of property located at 433 Fort Pitt Boulevard in the First Ward of the City of Pittsburgh (Property).[2]  In 2009, Forza applied for a Project Development Plan (2009 Application) with the City's Planning Commission (Planning Commission) seeking approval to construct a seven-story, 107-room hotel on the Property.  The Planning Commission's review is conducted pursuant to Section 922.10 of the Pittsburgh Zoning Code (Zoning Code).  The purpose is not to review the proposal for zoning compliance but "for evaluating plans in the broader context of development and plans of areas of regional significance."  Zoning Code § 922.10.  The criteria set forth are not quantitative but involve quality of life issues and consider how the building impacts the streetscape.  The Zoning Code does not require a public hearing or that any notice be given for consideration of Project Development Plans unless the matter involves a casino.  Zoning Code § 922.10.E.1(a).

---

**(continued…)**

Crecine are each owners of condominium units in a multi-story residential condominium located at 429 First Avenue in the First Ward in the City of Pittsburgh.

[2] The Property is bounded to the north by First Avenue, to the west by Cherry Way and to the south by Fort Pitt Boulevard.

At a public hearing on March 8, 2011, where at least two of the Objectors were present and voiced their opposition, the Planning Commission approved the 2009 Application subject to certain conditions.[3]   The Planning Commission did not issue a written decision of its approval of the 2009 Application.

Subsequently, the Planning Department of the City of Pittsburgh (Planning Department) requested certain design changes to the building while maintaining the same massing, parking and configuration of the building as approved in the 2009 Application.   As a result, Forza submitted a new Project

---

[3] The conditions are as follows:

> a. Final plans, elevations, and materials consistent with the current design shall be reviewed and approved by the Zoning Administrator prior to the issuance of a building permit, with particular attention to integration of building identification and high-wall signage, architectural lighting, and final building facade details;
>
> b. All necessary approvals for creation of the drop-off/pick-up area on Fort Pitt Boulevard must be obtained prior to issuance of an occupancy permit[;]
>
> c. Final traffic and operations information shall be reviewed and approved by the City Traffic Engineer and the City's Transportation Planner prior to issuance of an occupancy permit; and
>
> d. A construction management plan shall be submitted and approved prior to issuance of a building permit.

(Reproduced Record (R.R.) at 43a.)

Development Plan (2013 Application) in 2013 which explained that it was a revision and improvement to the 2009 Application. As before, in June 2014, the Commission approved the 2013 Application without a written decision. Objectors appealed.

Finding that the Planning Commission erred by not following proper procedure in reviewing the 2013 Application, the trial court reversed and remanded to the Planning Commission, directing it to conduct an evidentiary hearing and make written findings of fact. Specifically, the trial court found that Objectors were limited in their opportunity to be heard at the hearing and that "[t]heir comments were limited to no more than three minutes which was not appropriate in this case." (Reproduced Record (R.R.) at 18a.) Moreover, it reasoned that there lacked evidence to suggest that the mandatory review criteria were considered by the Planning Commission given the lack of written adjudication, findings of fact or a transcript.

By letter to the City's Zoning Administrator in May 2015, Forza withdrew its 2013 Application, explaining in pertinent part:

> You indicated that withdrawal of the 2013 Application is required for the issuance of a zoning voucher for the [2009 Application]. Since my client desires to obtain a zoning voucher for the 2009 Application, it has agreed to withdraw the 2013 Application.
>
> The withdrawal of the 2013 Application is predicated on your representation that the zoning voucher for the 2009 Application will be issued upon [Forza's] acknowledgement of certain items referenced in the e-mail sent to you by Erik Harless on March 17, 2015.

4

> Consistent with Erik's message, my client acknowledges the following items: (i) a separate Demolition permit application and narrative will be required; (ii) all temporary safeguards, scaffolding and crane life, etc., are subject to OSHA inspection and certification requirements; (iii) review for building code compliance will take place with standard review of final construction documents; and (iv) foundation design needs to indicate that there will be adequate safeguards, protections, etc. to address, if necessary, any impact on the adjacent structure.

(*Id.* at 21a.) Forza requested that the zoning voucher for the 2009 Application be issued.

Objectors responded by writing to the Planning Department's Director, stating that they "very strongly object to the City issuing any permits or in any way allowing a project to move forward under an alleged 2011 approval." (*Id.* at 51a.) The bases for their objections were: 1) that there lacked any indication in the 2013 Application that Forza preserved the 2009 Application or intended to preserve rights associated with the 2009 Application, meaning that the Planning Commission's approval of the 2009 Application was merged into the 2013 Application and upon withdrawal of the 2013 Application, all applications have been withdrawn; 2) Forza abandoned the 2009 Application when it submitted the 2013 Application and "[i]t is unreasonable to abandon an approval for four (4) years, pursue a revised approval, and then go back to the original 'approval' without an additional examination of the project by the Planning Commission"; 3) because the Planning Commission did not issue a written adjudication or findings of fact for the 2009 Application, that application was not approved; and finally 4) there are specific review criteria that apply to the project that must be examined

5

and findings of fact and an adjudication must be made on each of the criteria. (*Id.* at 52a.)

On July 6, 2015, the City notified Objectors' counsel that the Planning Department reviewed and approved Forza's 2009 Application and issued Forza a zoning voucher on June 3, 2015. Objectors appealed to the trial court on July 20, 2015. Explaining that the lack of a written decision by the Planning Commission does not affect the timeliness of an appeal, the trial court found that Objectors did not appeal the Planning Commission's March 8, 2011 decision within 30 days and, therefore, quashed the appeal.

## II.

### A.

The central issue on appeal[4] is whether the Planning Commission's approval without a written decision was sufficient to commence the 30-day appeal period within which Objectors must take their appeal. Because the Planning Commission did not issue a written decision subsequent to its approval, Objectors argue that the appeal period never commenced and that their appeal was timely filed.

---

[4] Our scope of review of a trial court's order quashing an appeal as untimely is limited to determining whether the trial court abused its discretion or whether it committed an error of law. *Southern Chester County Concerned Citizens Organization v. Zoning Board of Lower Oxford Township*, 937 A.2d 1141, 1143 n.4 (Pa. Cmwlth. 2007), *appeal denied*, 960 A.2d 842 (Pa. 2008).

Before we address the arguments of the parties, it is necessary to set forth the procedure employed in the City to process land use appeals. The City is governed by the provisions of the Zoning Code, not the Pennsylvania Municipalities Planning Code (MPC).[5] *Vitti v. Zoning Board of Adjustment of City of Pittsburgh*, 710 A.2d 653, 657 n.4 (Pa. Cmwlth. 1998).[6] Regarding appeals from the Planning Commission, Section 923.01.D of the Zoning Code provides that:

> Any party aggrieved by a decision of the Planning Commission, may, within thirty (30) days, appeal the decision to the Court of Common Pleas of Allegheny County under the Local Agency Law, 2 Pa.C.S. Sections 751-754.

For an individual to be aggrieved by a decision of the Planning Commission, that individual must have "a substantial, direct and immediate

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[6] The title of the MPC, in relevant part, provides:

> An Act to empower cities of the second class A, and third class, boroughs, incorporated towns, townships of the first and second classes including those within a county of the second class and counties of the second through eighth classes, individually or jointly, to plan their development and to govern the same by zoning, subdivision and land development ordinances, planned residential development and other ordinances, by official maps, by the reservation of certain land for future public purpose and by the acquisition of such land….

Section 981 of the MPC, 53 P.S. § 10918.

interest in the claim sought to be litigated." *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1149 (Pa. 2009) (citing *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975)).  The 30-day time period begins to run "after the entry of the order from which the appeal is taken."  42 Pa.C.S. § 5571(b). An order is deemed entered on the date of mailing.  42 Pa.C.S. § 5572.[7]

Most pertinent to this appeal is Section 555 of the Local Agency Law which provides that:

> **All adjudications of a local agency shall be in writing**, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.

2 Pa.C.S. § 555 (emphasis added).  If a person is aggrieved, then the Planning Commission's approvals can be appealable under the Local Agency Law.[8]

---

[7] The date of the entry of the order from which an appeal can be taken is provided by Section 5572 of the Judicial Code:

> The date of service of an order of a government unit, which shall be the date of mailing if service is by mail, shall be deemed to be the date of entry of the order for the purposes of this subchapter. The date of entry of an order of a court or magisterial district judge may be specified by general rules.

42 Pa.C.S. § 5572.

[8] Section 752 of Local Agency Law, 2 Pa.C.S. § 752, states:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such

**(Footnote continued on next page…)**

8

*Northwest Wissahickon Conservancy, Inc. v. Philadelphia City Planning Commission*, 64 A.3d 1135, 1138 (Pa. Cmwlth. 2013). No one has raised an issue whether Objectors are aggrieved or whether the Planning Commission's approval is an adjudication, only that Objectors' appeal has not been timely filed. That issue is determined by whether there is a requirement that the decision must be in writing.

While the City is not governed by the MPC, the parties agree that the relevant laws applicable to the City regarding appeals are substantially the same as those provided under the MPC, and that cases decided under the MPC are applicable.

**B.**

Forza and the City contend that under *Peterson v. Amity Township Board of Supervisors*, 804 A.2d 723 (Pa. Cmwlth. 2002), notwithstanding the requirement of entry of an order, the 30-day appeal period began to run on March 8, 2011, the date the Planning Commission voted without written decision to approve the 2009 Application.[9]

---

**(continued…)**

> appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

[9] The City and the Planning Commission state that at the time of the March 9, 2011 approval, it was the Planning Commission's practice to never issue written decisions.

9

In *Peterson*, the landowner filed an application for approval of a preliminary subdivision plan. On June 12, 2000, the township Board of Supervisors orally granted approval of the preliminary plan as long as certain conditions were met. Peterson was present and raised objections. No written decision was issued. On July 26, 2000, Peterson appealed to the court of common pleas and that appeal was quashed as untimely because it was not filed within 30 days.

On appeal, this Court reasoned that because no written decision was issued, no decision was "entered" as required by Section 1002-A of the MPC, 53 P.S. § 11002-A.[10] We also found there to be no "deemed" decision consistent with Section 1002-A of the MPC because the developer or the municipality did not give public notice of a deemed approval. We contemplated how the 30-day appeal period would be triggered in the absence of an "entered" decision pursuant to Section 5572 of the Judicial Code, 42 Pa.C.S. § 5572, or a "deemed" decision pursuant to Section 508(3) of the MPC, 53 P.S. § 10508(3), concluding:

> [W]hen a decision is neither "entered" pursuant to 42 Pa.C.S. § 5572 nor "deemed" pursuant to 53 P.S. 10508(3), the only two circumstances contemplated by Section 1002-A, what event triggers the running of the thirty-day appeal period? We believe that the intent of Section 1002-A was to begin that period when the municipality's decision process has been finalized with sufficient clarity that any party aggrieved by the decision can evaluate whether or not to appeal. An oral approval

___

[10] Section 1002–A of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11002–A.

10

by the Board meets this standard. Moreover, causing the appeal time to be triggered by expiration of the time for delivery of a written decision is problematic. First, a written decision is served on the applicant, not the objecting neighbor. *See Tierney v. Upper Makefield Township*, 654 A.2d 621, 624 (Pa. Cmwlth. 1995). In addition, an applicant may extend the time within which the Board must reduce its oral approval to writing, or waive the requirement altogether. 53 P.S. § 10508(3). In this circumstance, an aggrieved objector would be left to guess when his appeal time has begun to run or, worse, the time might never begin to run at all. Accordingly, we hold that the formal vote of the municipality to approve a subdivision plan begins the thirty-day period within which an aggrieved objector must appeal, at least to the extent the objector has actual or constructive notice of the decision.

*Peterson*, 804 A.2d at 728.

Finding that the township Board of Supervisors orally approved the landowner's preliminary plan on June 12, 2000, we concluded that Peterson's appeal filed on July 26, 2000, was untimely. However, we also noted that Section 508 of the MPC, 53 P.S. § 10508, requires a decision in writing for all requests for a subdivision, that the municipality failed to comply with its obligation to render one, and that Peterson reasonably and in good faith waited for an entry of a written decision. When it became apparent that no decision would be issued, Peterson promptly filed his appeal. Due to the breakdown in the administrative process, we granted *nunc pro tunc* relief, reversed the common pleas' court order and remanded for a determination on the merits. Forza and the City contend that this establishes that the time period for an appeal begins from oral approval of the Project Development Plan by the Planning Commission.

11

Relying on *Narberth Borough v. Lower Merion Township*, 915 A.2d 626 (Pa. 2007), Objectors argue that the appeal period begins to run when the written adjudication is mailed to or personally served on the parties. In that case, a landowner sought approval from the municipality to subdivide two parcels of land, which the township's Board of Supervisors orally approved, with conditions, at a public meeting held on March 20, 2002. On March 28, 2002, the township's Board of Supervisors issued and mailed the landowner and the Borough a written decision in support of its conditional approval of the plan. The Borough appealed to the court of common pleas on April 26, 2002, within 30 days of the written decision but not from the date the township orally approved the plan, by motion, at its public meeting. The landowner filed a motion to dismiss this appeal as untimely. The court of common pleas denied the landowner's motion and reversed the Board of Supervisors' determination to approve the landowner's plan on the merits.

On appeal, this Court reversed the court of common pleas' determination that the Borough's appeal had been timely. Finding that the 30-day appeal period began to run on March 20, 2002, when the township's Board of Supervisors orally announced its approval of the plan, we held that Narberth Borough's April 26, 2002 appeal was untimely filed because more than 30 days had passed since the oral approval. We concluded that the lower court was without jurisdiction to review the appeal.

Our Supreme Court, however, reversed, holding that the appeal period runs from the date of the mailing of the written decision, which meant that the

12

Borough filed its appeal within the 30-day appeal period set forth in Section 1002-A of the MPC, 53 P.S. § 11002-A. Addressing *Peterson*, it stated:

> While the *Peterson* court argued convincingly that lawmakers should take into account various problems the court identified with the process we find to be required by the current statute, we will not offer what amounts to amendatory legislation from the bench. The MPC neither identifies nor demands any asymmetry of treatment as between land use applicants and objectors seeking to appeal land use decisions. Rather, it creates a period of time during which all appeals must be filed and it specifies a triggering event, the mailing or other direct communication of the written decision, that begins the running of that time, an identifiable event, one that not only occurred in this case but occurred at a time certain actually known to all relevant parties.[11]

*Narberth*, 915 A.2d at 636.

*Peterson* has effectively been overruled by *Narberth*, which holds that all zoning decisions are not final until a written decision is issued, and until a

---

[11] In footnote 19, our Supreme Court stated:

> We will not speculate as to the disposition of a case where a decision is "entered" by mailing to an applicant, and an objector subsequently argues that it neither knew nor could have known of that mailing. However, we caution objectors that under the current statutory scheme, they may well have the burden of determining the date of the entry of the decision by communication to the applicant, notwithstanding that they are not legally entitled to service thereof.

*Narberth Borough*, 915 A.2d at 636 n.19.

written decision is issued, there is no order to appeal.[12] "The decisional law of this Commonwealth confirms that a final order of a [ZHB] must be reduced to writing." *See also  Pendle Hill v. Zoning Hearing Board of Nether Providence Township,* 134 A.3d 118  (Pa. Cmwlth. 2016); *Seipstown Vill., LLC v. Zoning Hearing Board of Weisenberg Township*, 882 A.2d 32 (Pa. Cmwlth. 2005) (citing *Relosky v. Sacco*, 523 A.2d 1112 (Pa. 1987)).

For the foregoing reasons, we reverse the trial court.

_____

DAN PELLEGRINI, Senior Judge

---

[12] Forza, the City and the Planning Commission further argue that *Stanton Heights Community Organization v. Zoning Board of Adjustment of Pittsburgh* (Pa. Cmwlth., No. 1557 C.D. 2011, filed December 4, 2012), supports their position.  Ignoring that it is an unreported opinion, the matter of whether a written decision was required was not at issue in that case.  Even if it was at issue, *Stanton Heights* is inconsistent with *Narberth*.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

First Avenue Partners, a Pennsylvania : 
limited partnership, James D. Bolander : 
and Mona A. Bolander, husband and : 
wife, Barbara C. Johnstone, William R. : 
Hartz, Paul Richard Bernthal, : 
Christopher Ragland and April M. : 
Ragland, husband and wife, : 
Mary Ellen Purtell and Robert Crecine, : 
            Appellants : 
             : 
           v. :   No. 2476 C.D. 2015
             : 
The City of Pittsburgh Planning : 
Commission and City of Pittsburgh and : 
Forza Fort Pitt, Inc. : 

# **O R D E R**

AND NOW, this 9<u>th</u> day of <u>December</u>, 2016, the order of the Court of Common Pleas of Allegheny County, dated October 29, 2015, at No. SA 15-000600, is reversed.

_____
DAN PELLEGRINI, Senior Judge