# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amos S. Lapp and Emma S. Lapp,  :
:
Appellants  :
:
v.  : No. 1845 C.D. 2016
: ARGUED: June 5, 2017
Lancaster County Agricultural Preserve  :
Board  :


BEFORE:  HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED


**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  July 31, 2017**


Amos S. Lapp and Emma S. Lapp (the Lapps) appeal from an order of the Court of Common Pleas of Lancaster County (common pleas) granting a petition to quash their appeal as untimely filed. The Lancaster County Agricultural Preserve Board (Board) filed the petition in response to the Lapps' latest request to subdivide farmland that is subject to an agricultural land preservation easement that the prior land owners (the Harnishes) granted and the Board accepted and approved in February 1985. We affirm.

By way of background, the property at issue is located at 430 Baumgartner Road in Pequea Township, Lancaster County. The Harnishes preserved approximately ninety-four acres of the farm via a Lancaster County Pennsylvania

Agricultural Land Preservation Grant of Easement as recorded in the Lancaster County Recorder of Deeds Office (1985 easement). Lapps' November 22, 2013, Notice of Appeal, Exhibit B (1985 easement); Reproduced Record (R.R.) at 22-29a. Pursuant to the deed restrictions in the 1985 easement, the permitted use of the land is restricted to agricultural uses and directly associated uses "defined as customary, supportive and agriculturally compatible uses of farm properties in Lancaster County . . . ." *Id*. at 23a. The only reference to a potentially permissible subdivision in the 1985 easement is for residences, and the applicable section provides:

> 3. Residences permitted on the land subject to these restrictions are only those pre-existing dwellings, the replacement of pre-existing dwellings, and an additional dwelling or dwellings intended for use and occupancy by a person who or a family, at least one member of which, earns a substantial part of his or her livelihood from the farm operation, or is a parent or child of the operator of the farm. Such permitted dwellings may be constructed either on the original parcel or on lots *subdivided* from the original parcel at a density not to exceed 1 dwelling per 25 acres of the original parcel. Minor exceptions may be considered and are subject to approval by the GRANTEE in the event that these restrictions conflict with State or local requirements. Other residential *subdivision* and uses are prohibited.

*Id*. at 24a (emphasis added).

Pursuant to an April 1996 recorded deed, the Lapps purchased the farmland from the Harnishes. The deed's subdivision provision provides as follows:

> The subject land may be subdivided if subdividing will not harm the *economic viability* of the subject land for agricultural production. If the subject land is subdivided, the Deeds to all of the subdivided parcels shall state on which of the subdivided parcels the residential structure permitted by this Deed may be constructed. Deeds to all other parcels shall recite that no additional residential structure is permitted.

*Id.*, Exhibit A (1996 deed); R.R. at 18a (emphasis added).[1]

Following their purchase, the Lapps sought permission from the Board to subdivide their land on multiple occasions and each time it denied their request. Although the record is somewhat opaque, it is undisputed that the land comprises slightly less than one hundred acres which is physically divided by a road, leaving approximately twenty acres on one side and the remainder on the other. In each request, the Lapps sought to subdivide off the smaller piece. In pertinent part, the denial letters provide as follows:

> **November 1995**: "The Board discussed at length your proposal to subdivide the house and 20 acres off the . . . Harnish farm which you are buying. . . . [It] felt that to take the 20 acres off would not result in a commercially viable farm operation."

> **March 1999**: Specifically referencing the fact that the Lapps wished to convey a tract to two of their children, the 1999 letter provided: "This morning at [its] meeting, the Board reviewed your request to subdivide the twenty acres and farm buildings . . . from the remainder of the farm . . . 75+ acres . . . . . [It] continues to take the position that to take the twenty

---

[1] Regarding any conflict between the 1985 easement and the 1996 deed, the Board determined in its February 2008 letter denying the Lapps' October 2007 application to subdivide that the 1996 deed did not include the deed restrictions set forth in the 1985 easement. Accordingly, the Board in that letter noted its motion requesting that the Lapps re-record the deed and include the applicable restrictions set forth in the 1985 easement. Lapps' November 22, 2013, Notice of Appeal, Exhibit E (Board's February 6, 2008, letter); R.R. at 36a. As evidenced by the arguments made in the present lawsuit, the Lapps apparently failed to follow the Board's directive.

The Lapps make much of the fact that the Board's solicitor prepared the 1996 deed and included a provision regarding "economic viability." The Board concedes that the law firm representing it in the present appeal, at times, acted as solicitor for the Board in matters where the Board was a party. It notes, however, that the Board was not a party to the sale between the Harnishes and the Lapps and that the firm was not representing the Board when it prepared the 1996 deed. In any event, our resolution of this appeal on procedural grounds renders irrelevant any conflict between the easement provisions set forth in the 1996 deed and the 1985 easement.

acres off would not result in a commercially viable farm operation."

**December 2003**: "According to the [1985 easement], a total of two acres may be subdivided from the farm. One acre was subdivided from the farm in 1995, leaving one more acre that may be subdivided. For this reason, your request to subdivide more than one acre was not approved."

Board's January 29, 2014, Petition to Quash Appeal, Exhibits A, B, and C (Board's letters dated November 21, 1995, March 25, 1999, and December 1, 2003); R.R. at 81-83a.

After the Board's 2003 letter, the evidence reflects that the Lapps made various requests to the Board to reconsider their request to subdivide their farm in 2007, 2008, 2012, and 2013 (the denial at issue in the present appeal). Those requests included the Lapps' October 2007 written application for subdivision on the Board's form, wherein they requested to subdivide approximately nineteen acres. Lapps' November 22, 2013, Notice of Appeal, Exhibit D (October 2007 application); R.R. at 33-34a.[2] In its February 2008 denial letter, the Board indicated that it had denied the Lapps' October 2007 request in January 2008 because the 1985 easement "by which your predecessor in title preserved the farm and which was in effect when you acquired the farm" does not permit agricultural subdivisions of the property. *Id.*, Exhibit E (Board's February 6, 2008, letter); R.R. at 36a. As noted above, the 1985 easement refers only to residential subdivisions. The Lapps did not appeal from the denial of their October 2007 written application.

---

[2] In response to the form's printed query as to how the subdivision would promote the continued viability of, and would be compatible with, the farmland preserved for agricultural use, the Lapps responded as follows: "A residence currently exists on both proposed tracts, with each resident farming their respective side of the road. No additional structures will be constructed. The 19-acre tract is, and will remain, a viable farm." *Id.* at 34a.

4

Subsequently, although the minutes from the Board's August 2008 meeting indicate that there were no pending requests for subdivision, the section entitled "Business from Guests" reflects that Mr. Len Ferber again addressed the Board on behalf of Mr. Lapp regarding his request to subdivide approximately twenty acres from his farm. Mr. Ferber provided the Board with a copy of the 1996 deed, which included "a paragraph stating the farm may be subdivided if the subdivision does not harm the economic viability of the farmland for agricultural production." Board's Minutes from August 28, 2008, Meeting; R.R. at 87a. The minutes indicate that "Mr. Lapp has been informed numerous times through letters, monitoring reports, visits to his farm and his own attendance at meetings of the [Board] that . . . his deed references the wrong easement, and that the paragraph describing subdivision that [Mr. Ferber] just referenced is not part of the Grant of Easement that applies to Mr. Lapp's farm." *Id*. Stating that the Grant of Easement that applies to Mr. Lapp's farm does not permit the subdivision of twenty acres, staff was to mail copies of relevant correspondence regarding that issue to Mr. Ferber for his review.

Approximately four years later, in May of 2012, in a document characterized as a petition for special exception, the Lapps again sought to have the Board consider their request to subdivide their farm into two farms, one containing twenty acres and the other seventy-five. In their petition, the Lapps cited the 1996 deed in support of their averment that a subdivision would not "harm the economic viability of the subject land for agricultural production." Lapps' November 22, 2013, Notice of Appeal, Exhibit F (May 2012 petition for special exception); R.R. at 41a. The Board's director in June 2012 advised counsel for the Lapps that he was declining to place their petition for special exception on the agenda for the next Board meeting because "the Lapps have, on several occasions, submitted an *identical* subdivision

5

request to the [Board] seeking its approval for the subdivision . . . in the *same* manner as your recent request . . . [and it] has consistently and unanimously declined to approve the proposed subdivision of the preserved farm." *Id*., Exhibit G (Board's June 6, 2012, letter); R.R. at 58a (emphasis added). In summary, the director stated: "After careful staff review and much discussion, it is our conclusion that no new facts, circumstances or arguments have been presented that would warrant placing the matter before the Board, yet once again, for its consideration." *Id*. The Lapps did not appeal from the Board's June 2012 letter denying their May 2012 petition for special exception nor, indeed, were appeals filed from any of the prior requests.

In August 2013, more than a year after the Board's June 2012 refusal to place the Lapps' May 2012 subdivision request on the agenda, the Lapps again appeared before the Board. In the October 2013 letter from the Board to the Lapps' attorney that the Lapps treated as a final adjudication for purposes of the present appeal, the Board stated as follows:

> At the August 22, 2013 meeting of the . . . Board, you requested that the Board hear a request for subdivision of the preserved farm owned by [the Lapps].
>
> The Board has consistently and unanimously denied numerous, *identical* requests for subdivision of this farm. After review and discussion, the Board has declined to hear the subdivision request another time.

*Id*., Exhibit H (Board's October 25, 2013, letter); R.R. at 60a (emphasis added). Subsequently, the Lapps appealed to common pleas and, following discovery, it granted the Board's petition to quash their appeal as untimely. The Lapps' appeal of that order is now before us for review. On appeal the Lapps argue that the court erred in determining that their appeal was untimely and that it should have granted their appeal on the merits.

Our review of an order quashing an appeal as untimely is limited to determining whether the court abused its discretion or committed an error of law. *First Ave. Partners v. City of Pittsburgh Planning Comm'n*, 151 A.3d 715, 719 (Pa. Cmwlth. 2016). Here, the trial court reasoned that the October 2013 letter stating that the Board would not put the matter on its agenda did not constitute an adjudication as defined in Section 101 of the Administrative Agency Law.[3] Where an agency's order or determination is not an adjudication, the remedy of appeal to the court is not available. *Cook v. Pa. Dep't of Agric.*, 646 A.2d 598, 601 (Pa. Cmwlth. 1994). Moreover, the Lapps' appeal from that action was untimely with respect to any past adjudications which denied their subdivision requests on the merits.

Initially, we note the requirements for both an applicant and the Board regarding requests to subdivide farm land that is the subject of an agricultural conservation easement. Section 14.1(i)(2)(i) and (ii) of the Agricultural Area Security Law,[4] in pertinent part, provides:

(i) Subdivision of land after easement purchase.‒

. . .

(2) The county board may agree to permit a parcel of land subject to an agricultural conservation easement to be subdivided after the granting of such easement as follows:

(i) The landowner of record may submit an application, in such form and manner as the county board

---

[3] An adjudication is defined, in pertinent part, as follows:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa. C.S. § 101.

[4] Act of June 30, 1981, P.L. 128, *as amended*, added by Section 3 of the Act of December 14, 1988, P.L. 1202, 3 P.S. § 914.1(i)(2)(i) and (ii).

may prescribe, to the county board requesting that a parcel of land subject to an easement be subdivided. Upon receipt of the application, the county board shall cause to be forwarded written notification thereof to the county zoning office, county planning office and county farmland preservation office, herein referred to as the reviewing agencies. Each reviewing agency shall have 60 days from receipt of such notification to review, comment and make recommendations on the proposed application to the board.

(ii) After reviewing the application and the comments and the recommendations submitted by the reviewing agencies, the county board shall approve or reject the application to subdivide within 120 days after the date of its filing unless the time is extended by mutual agreement of the landowner and reviewing agencies.

. . .

(iv) If the application to subdivide is rejected by the county board, the application shall be returned to the landowner with a written statement of the reasons for such rejection. *Within 30 days after the receipt of the statement of rejection, the landowner may appeal the rejection in accordance with 2 Pa. C.S. Ch. 5 Subch. B (relating to practice and procedure of local agencies) and Ch. 7 Subch. B (relating to judicial review of local agency action).* [Emphasis added.]

As Section 14.1(i)(2)(i) of the Agricultural Area Security Law provides, the process to obtain subdivision approval from the Board is initiated by a written application. Here, the evidence reflects that a representative for the Lapps made an oral request regarding subdivision at an August 2013 meeting in excess of one year after the Board's June 2012 determination that there were "no new facts, circumstances or arguments . . . presented that would warrant placing the matter before the Board, yet once again, for its consideration." Lapps' November 22, 2013, Notice of Appeal, Exhibit G (Board's June 6, 2012, letter); R.R. at 58a. Absent a written application to the Board, there was nothing the Board was required to consider. Even assuming that

8

rejection of a request to place a matter on the agenda could in some circumstances amount to a "final . . . ruling . . . affecting property rights," the refusal to do so based on the Lapps' August 2013 oral request plainly did not constitute an adjudication of their subdivision rights.

The Lapps maintain, nonetheless, that the Board *never* afforded them notice and an opportunity to be heard on the merits of their subdivision request, and thus there was never a *valid* adjudication, so we must send the matter back to the Board to give them another bite of the apple. The problem with this argument is twofold. First, the record does not support their bare assertion. Although the record shows that the Board considered and rejected their requests many times over the past twenty years, the Lapps, after discovery, placed nothing in the record before common pleas to suggest that they were ever denied a hearing until their sixth request in 2012. Second, even assuming *arguendo* that the Lapps may have been denied due process in the procedures leading up to one or more of those adjudications, they never appealed any of them nor, as far as the record reflects, made any complaint about the process at the time.[5] Their present argument simply comes too late, as does this appeal with respect to any actual adjudication which occurred years ago. Thus common pleas did not err in quashing it.[6]

---

[5] Although we may have some concerns that the procedure outlined in the statute does not expressly provide for a hearing, we need not address these concerns here.

[6] Moreover, the Lapps have not averred, let alone established, any change of circumstances justifying relitigating their oft-repeated request to subdivide the twenty acres across the road from the main portion of their farm, the Board was amply justified under principles of *res judicata* in refusing to reopen the matter. This Court provided a detailed description of *res judicata* in *J.S. v. Bethlehem Area School District*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002), wherein we stated as follows:

> Res judicata encompasses two related . . . principles: technical res judicata and collateral estoppel. *Technical res judicata provides that where a final judgment on the merits exists, a future lawsuit on the*

**(Footnote continued on next page…)**

9

Accordingly, we affirm.

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

**(continued…)**

> *same cause of action is precluded.* Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment.
>
> Technical res judicata requires . . . four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued. Res judicata applies to claims that were actually litigated as well as those matters that should have been litigated. Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings.
>
> Similarly, collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) *the prior action resulted in a final judgment on the merits*, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. [(citations omitted) (emphasis added).]

In response to the Lapps' argument that there are economically viable grounds for their subdivision request and that, accordingly, the Board erred in determining that their latest request was identical, we reiterate that the Board as early as its February 2008 letter denying their written application for subdivision ruled, *inter alia*, that they were bound by the deed restrictions in the 1985 easement and not those set forth in the 1996 deed with the economic viability language.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amos S. Lapp and Emma S. Lapp,    :
                             :
            Appellants    :
                             :
                v.            :    No. 1845 C.D. 2016
                             :
Lancaster County Agricultural Preserve   :
Board                                :

# **O R D E R**

AND NOW, this 31st day of July, 2017, the order of the Court of Common Pleas of Lancaster County is hereby AFFIRMED.

 

                            _____

                            **BONNIE BRIGANCE LEADBETTER,**
                            Senior Judge